IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MORENO, et. al., | Nos. C 04-4699 SI & 04-4723 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANT STEVEN J. WEAVER'S MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| S. J. WEAVER CONTRACTING, INC., a California corporation; and STEVEN J. WEAVER, an Individual, | |
| Defendants. | |

On January 13, 2006, the Court heard oral argument on defendant Steven Weaver's motions for summary judgment in the related actions of *Moreno et al. v. S. J. Weaver Contracting, Inc. et al.*, 04-4699 SI and *Bergo et al. v. S. J. Weaver Contracting, Inc.*, 04-4723 SI. At the hearing, plaintiffs requested the opportunity to submit supplemental briefing on the issue of whether plaintiffs could hold defendant liable by "piercing the corporate veil." The parties submitted supplemental briefs in February 2006. Having considered the arguments of counsel and the papers submitted, and for good cause appearing, the Court hereby GRANTS the motions for the reasons set forth below.

**BACKGROUND**

Plaintiffs are a number of trust funds that provide a variety of benefits for laborers, retired laborers and other covered employees. *See* Complaint ¶ 7. In November 2004, the plaintiff trust funds filed two related actions against defendants S. J. Weaver Contracting, Inc. ("SJW") and Steven J. Weaver ("Weaver"), the President and sole shareholder of SJW, *Moreno et al. v. S. J. Weaver Contracting, Inc. et al.*, 04-4699 SI and *Bergo et al. v. S. J. Weaver Contracting, Inc.*, 04-4723 SI.

Plaintiffs bring these actions under Section 301 of the Labor Management Relations Act ("LMRA") and Section 502 of the Employee Retirement Income Security Act ("ERISA"), seeking damages for the breach of several collective bargaining agreements.

Plaintiffs allege that on or about December 10, 2003, defendants entered into two separate written collective bargaining agreements with the Northern California District Council of Laborers and the District Council of Plasterers and Cement Masons of Northern California (referred to as the "Memorandum Agreements"). *Id.* at ¶ 8. Plaintiffs allege that pursuant to the Memorandum Agreements, defendants agreed to be bound by all provisions of the Laborers' Master Agreement for Northern California and the Cement Masons Master Labor Agreement for Northern California ("Master Agreements"), and that by agreeing to both the Memorandum Agreements and the Master Agreements, defendants further agreed to be subject to and bound by all provisions and conditions of written trust agreements which established the plaintiff trust funds. *Id.*

Plaintiffs allege that under the Memorandum Agreements, Master Agreements, and trust agreements, defendants agreed that they would make regular contributions into the plaintiff trust funds. *Id.* at ¶ 9. Plaintiffs allege that defendants materially breached these agreements by failing to make required contributions to the trust funds for each hour worked by covered laborer personnel, by failing to make required wage payments and by failing to observe hiring hall and dispatch requirements. *Id.* at ¶ 11.

Plaintiffs allege that SJW and Weaver "were and are a business entity," that SJW is an "employer" within the meaning of ERISA and the LMRA, and that Weaver "is an individual who owns, operates and controls" SJW. Complaint ¶ 5. Plaintiffs also allege that SJW and Weaver constitute a "single employer." *Id.* Plaintiffs do not allege that Weaver is an "employer" under either ERISA or the LMRA.

On May 10, 2005, SJW sought voluntary bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code. *See* Weaver Decl. ¶ 10, Ex. A; Kovacich Decl. ¶ 4. On June 24, 2005, the bankruptcy trustee, Rosendo Gonzalez, Esq. issued his "Report of Trustee in Chapter 7 No Asset Case," in which he declared that SJW's scheduled assets were "burdensome, or of inconsequential value or are encumbered beyond value," and effectively closed SJW's bankruptcy. Weaver Decl. Ex. A.

2

Weaver has filed a motion for summary judgment arguing that as a matter of law he cannot be held personally liable under either a labor law "single employer" or "alter ego" theory. Weaver also contends that summary judgment is appropriate because plaintiffs have not alleged that they can "pierce the corporate veil," and thus there is no basis for Weaver's liability. Weaver has submitted numerous declarations in support of his motions. Plaintiffs oppose the motions and have filed declarations in support of their oppositions. Each side has filed objections to the other's evidence.

## **LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**1.     "Single Employer" and "Alter Ego" Liability**

Weaver argues that as a matter of law, an individual corporate shareholder or officer cannot be held liable under labor law "single employer" or "alter ego" theories of liability. Weaver argues that these theories of liability are applicable only to "employers," not individual corporate officers or shareholders, in situations where it is alleged that one (non-union) employer is being used to evade a second (union) employer's obligations to make fringe benefit contributions.

The Court agrees that Weaver cannot be held liable under either of these labor law theories. In *Local 343 v. Nor-Cal Plumbing*, 48 F.3d 1465 (9th Cir. 1995) – a case on which plaintiffs rely heavily – the Ninth Circuit explained the labor law "single employer" and "alter ego" theories:

> [I]t may be perfectly legal for a contractor to conduct business through a "double breasted" operation, one in which the same contractor owns both union and non-union companies for legitimate business purposes. In such cases, the collective bargaining agreement of the union firm does not ordinarily apply to the non-union firm. Out of concern, however, that some contractors would use double breasted operations to avoid their collective bargaining obligations, the courts and the NLRB have developed two conceptually related, but distinct theories – "single employer" and "alter ego" – to guard against such abuse.
>
> The requirements of the two theories overlap substantially. Under both theories, the district court must first determine whether the two *firms* are a single employer by measuring the degree of common ownership, management, operations, and labor relations.

*Id.* at 1469-70 (emphasis added). The court further explained that under a "single employer" theory, the district court must defer to the NLRB, which has primary jurisdiction to determine whether the employees of both the union and non-union companies should be treated as a single bargaining unit; only if the NLRB has made such a determination may a district court impose liability under a "single employer" theory. *Id*. at 1470. In contrast, to prevail on an "alter ego" theory, the plaintiffs must show that the two firms were a single employer and that the non-union company was being used in "a sham effort to avoid collective bargaining obligations rather than for the pursuit of legitimate business objectives untainted by union animus." *Id.* (internal citations and quotations omitted).

Plaintiffs do not specifically address Weaver's arguments, nor have they cited any cases in which courts have imposed liability on an individual shareholder or officer under either labor law "single employer" or "alter ego" theories. Instead, plaintiffs confusingly assert that Weaver can be held liable

4

under either a "single employer" or "alter ego" theory because, under either theory, the Court must "pierce the corporate veil" in order to reach Weaver. However, in arguing that they have made out a *prima facie* case against Weaver, plaintiffs only address the elements of "single employer" or "alter ego" liability, and do not argue that they have met the elements necessary to pierce the corporate veil.

The cases cited by plaintiffs are unavailing. Indeed, one of the cases, *Brown v. Astro Holdings, Inc.*, 385 F. Supp. 2d 519 (E.D. Pa. 2005), supports Weaver's position; in that case, the court held that the plaintiff could seek alter ego liability against corporate defendants, and could hold an individual shareholder liable only by piercing the corporate veil. *Id.* at 531-34. Two of the cases hold that an individual shareholder can be held liable as a fiduciary under ERISA. *See Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equipment Co.*, 353 F. Supp. 2d 851, 854 (E.D. Mich. 2004); *Board of Trustees of the Airconditioning and Refrigeration Indus. Health & Welfare Trust Fund v. J.R.D. Mechanical Servs. Inc.*, 99 F. Supp. 2d 1115, 1121 (C.D. Cal. 1999). Finally, plaintiffs' reliance on *Solomon v. Klein*, 770 F.2d 352 (3d Cir. 1985), is also misplaced. *Solomon* held that a corporate officer cannot be held liable under ERISA simply because he acted for the corporation in all matters related to employee benefit funds. *Id.* at 354.[1]

### 2. Piercing the Corporate Veil

At the oral argument on this matter, plaintiffs requested the opportunity to submit supplemental briefing on the issue of whether Weaver can be held liable by "piercing the corporate veil." The Court notes that despite being provided this opportunity, plaintiffs' supplemental brief again argues that Weaver can be held liable under the labor law "single employer" and "alter ego" theories discussed above.

In deciding whether to pierce the corporate veil, the Court considers three factors: "(1) the

---

[1] Consistent with this Court's holding, the court in *Solomon* noted that, in order to hold an individual defendant liable under a *corporate* alter ego theory, the plaintiff must be able to pierce the corporate veil. *Solomon*, 770 F.2d at 353-54. Such a case would include evidence of the defendant's failure to observe corporate formalities and its fraudulent use of the corporate form. *Id.; see also* Piercing the Corporate Veil discussion, *infra*. In *Solomon* the parties stipulated that there was no basis for the plaintiffs to proceed against the individual defendant on a theory that the corporate veil should be pierced. *Id.* at 353. The plaintiffs therefore presented an alternate, non-alter ego theory, which the court rejected. *Id.* at 353-54.

5

1  amount of respect given to the separate identity of the corporation by its shareholders, (2) the degree
2  of injustice visited on the litigants by recognition of the corporate entity, and (3) the fraudulent intent
3  of the incorporators." *Nor-Cal Plumbing*, 48 F.3d at 1475 (quoting *Seymour v. Hull & Moreland Eng'g*,
4  605 F.2d 1105, 1111 (9th Cir. 1979)).  The plaintiff must establish the first factor as threshold matter,
5  and then one of the other two factors.  *Id.* (citing *Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877
6  F.2d 769, 773 (9th Cir. 1989)).  Weaver argues that the Complaints in both cases do not include any
7  "veil piercing" allegations (for example, they do not allege that SJW's corporate identity was not
8  maintained), and thus Weaver is entitled to judgment as a matter of law.

9  Although plaintiffs' Complaints do not contain allegations supporting a "veil piercing" theory
10 and their papers do not address the proper standard, plaintiffs' papers do contain arguments and
11 evidence that could have been applied to the three-factor test detailed above.  Therefore, in light of
12 plaintiffs' expressed intention to proceed under a "veil piercing" theory, the Court will analyze whether
13 plaintiffs have submitted admissible evidence sufficient to defeat summary judgment on Weaver's
14 personal liability.

16 **a.  Factor 1:  Separation of corporate and individual shareholder identities**

17 Although a close call, the Court concludes that a genuine issue of fact exists as to whether
18 Weaver demonstrated sufficient respect for SJW's corporate identity.  Corporate officers and
19 shareholders show proper respect for corporate formalities when they issue common stock, provide
20 adequate capitalization, maintain separate corporate records and hold appropriate corporate meetings.
21 *See Seymour*, 605 F.2d at 1112; *Valley Cabinet*, 877 F.2d at 772-73.  Commingling of personal assets
22 with corporate assets, on the other hand, is a serious abuse of the corporate identity.  *Valley Cabinet*,
23 877 F.2d at 773 (citing *Seymour*, 605 F.2d at 1112).

24 In his declaration filed on December 5, 2005, Weaver states that SJW conducted annual
25 corporate meetings, memorialized these meetings in minutes, maintained properly authorized bylaws

6

and issued common stock. Weaver Decl., ¶ 3.[2] Plaintiffs provide no independent evidence suggesting that these corporate formalities were not undertaken by SJW.[3]

Plaintiffs do argue, however, that Weaver commingled assets with SJW. Plaintiffs' main evidence of commingling is an itemized copy of the activity in Weaver's shareholder account for 2004-2005. *See* Weaver Reply Decl. Ex. A.[4] The shareholder account report reveals that, during 2004 and 2005, SJW made several payments to Weaver and to third parties on Weaver's behalf, including Weaver's wife, the bank that financed Weaver's home and other, non-SJW-related companies owned by Weaver. *Id.* Funds from the shareholder account were also used to pay Weaver's personal and property taxes. *Id.* The account information also indicates that Weaver made several loans to SJW in 2004. *Id.* Weaver concedes that these were interest-free loans to the corporation. *See* Nguyen Reply Decl., ¶ 4.

Both Weaver and SJW's assistant controller, Toan Nguyen, contend that the loans made to SJW by Weaver were arms' length transactions that were properly recorded on SJW's financial statements. *See* Nguyen Reply Decl., ¶ 4[5]; Weaver Decl., ¶ 4. Nguyen also asserts that such shareholder loans are a "typical method of financing used by most closely-held companies." *See* Nguyen Reply Decl., ¶ 4. Finally, Nguyen states that the payments to Weaver, his wife and other third parties on Weaver's behalf

---

[2] Plaintiffs object to this evidence on the grounds that it is irrelevant and that Weaver lacks the knowledge to make such assertions. The information is clearly relevant to the first prong of the corporate veil test, and, as SJW's president and sole shareholder (facts that plaintiffs do not contest), Weaver possesses the personal knowledge necessary to make these statements. Accordingly, the Court OVERRULES plaintiffs' objections to the Weaver declaration.

[3] Weaver has not produced any documents - e.g., board meeting minutes- that would confirm his assertions regarding observance of corporate formalities, although he claims to possess them. Plaintiffs apparently did not request these documents during discovery.

[4] The exhibit, entitled "Payments Made To or On Behalf of an Insider and Stockholder Balance", was an attachment to SJW's bankruptcy petition. The Court takes judicial notice of those proceedings and concludes that the document is admissible evidence. The Court notes that although this document has been submitted as evidence by both parties, both parties have objected to its introduction when submitted by the opposing party. The Court OVERRULES these objections.

[5] Plaintiffs object to the declarations of Toan Nguyen, SJW's assistant controller, primarily on the grounds that his testimony is irrelevant and lacks foundation. Nguyen testifies that, as assistant controller, he has personal knowledge of many of SJW's financial transactions, including those transactions itemized in Weaver's shareholder account. Nguyen's assertions and opinions are based on this personal knowledge and limited to SJW's financial dealings. The Court concludes Nguyen's testimony is admissible and OVERRULES plaintiffs' objections.

7

represent repayments of the loans and that these payments were only made when SJW had sufficient revenue. *Id.* at ¶ 5.

While a jury could conclude that Weaver properly segregated his assets from those of SJW through the use of the shareholder account, a jury could also reasonably infer that the shareholder account represents an improper commingling. The sheer number of payments made from the shareholder account to third parties - for example, over 15 separate payments were made to Weaver's wife in 2004 - might suggest that Weaver used the account as a type of personal checking account.

In addition to the shareholder account report, plaintiffs also submit admissible evidence indicating that Comerica, SJW's bank, extended substantial personal loans to Weaver that were guaranteed by SJW. Watson Decl., Ex. D., ¶ 9.[6] This evidence also suggests that Weaver may have been treating SJW's assets as his own. *See Seymour* 605 F.2d at 1112 (noting that interest-free loans provided by the corporation to shareholders was "evidence of a disrespect for corporate individuality"); *see also Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-up Serv., Inc.*, 736 F.2d 516, 524 (9th Cir. 1984) (finding that undocumented, interest-free loans made by shareholders to the corporation were evidence of insufficient respect for corporate identity).

In summary, although Weaver provides substantial evidence that corporate formalities were adequately respected, the Court concludes that a genuine issue of material fact exists with regard to whether Weaver improperly commingled his assets with those of SJW.

### b. Factor 2: Fraudulent use of corporate form

The Court finds that Weaver did not misuse the corporate form with fraudulent intent and that there is no genuine issue of material fact on this matter. Fraudulent use of the corporate form may occur either at the corporation's formation or at any point during its ongoing operation. *Valley Cabinet*, 877 F.2d at 773 (specifically holding that fraudulent use of the corporate form could occur after the corporation's non-fraudulent inception). Moreover, the alleged fraud must involve use of the corporate

---

[6] Watson Decl., Ex. D, entitled "Declaration of Clark Foster," is a declaration by a Comerica vice-president that was submitted as part of SJW's bankruptcy proceedings. As previously stated, the Court takes judicial notice of the filings in those proceedings.

8

1 form; other acts of fraud committed by the defendant are insufficient. *See id.* at 773 ("Garden variety
2 fraud should be insufficient to pierce the corporate veil in the absence of evidence of shareholder abuse
3 of the corporate form to defraud creditors"). Finally, "the very fact of continuing to do business for a
4 period of at least five years tends to indicate a good faith use of the corporation to conduct a legitimate
5 business enterprise." *Seymour*, 605 F.2d at 1113.

6 Plaintiffs have failed to provide sufficient evidence from which the requisite fraudulent intent
7 can be inferred. SJW was incorporated in 1997, six years prior to the signing of the disputed
8 agreements. Weaver Decl. ¶ 2. Both Weaver and SJW's controller state that SJW was adequately
9 capitalized from its inception until a business downturn in 2003-2004. Weaver Decl. ¶ 2; Nguyen Reply
10 Decl. ¶¶ 2-3. This six year history as a ongoing enterprise "tends to indicate a good faith use of the
11 corporat[e]" form. *See Seymour*, 605 F.2d at 1113. Moreover, the Ninth Circuit has held that fraud
12 cannot be inferred "simply on the basis of bad financial times." *Seymour*, 605 F.2d at 1113.

13 Plaintiffs attempt to rebut this evidence of SJW's good faith use of the corporate form by first
14 arguing that Weaver acted with fraudulent intent when he allegedly and deliberately decided not to make
15 payments to the trust fund. Even if plaintiffs can prove that Weaver intentionally disregarded SJW's
16 alleged trust fund obligations, such proof would not establish the type of fraud required to pierce the
17 corporate veil. *See Seymour*, 605 F.2d at 1113. In *Seymour*, the Ninth Circuit noted that there was a
18 "substantial amount of evidence from which the bad faith of [the two defendant individuals] might be
19 inferred in disregarding their obligations to the fringe benefit funds." *Id.* The evidence, in fact,
20 supported the inference that the defendants' failure to make the payments was "deliberate." *Id.* at 1109.
21 Nonetheless, the court held that there was "no evidence" that the defendants had engaged in fraudulent
22 misuse of the corporate form that would support piercing of the corporate veil. *Id.* at 1113.

23 Plaintiffs next argue that Weaver fraudulently drained the corporation's assets by withdrawing
24 approximately $6 million from SJW's bank account. Transfer of corporate funds to a shareholder's
25 personal account, if done with the intent to defraud creditors, could satisfy the fraudulent intent prong
26 of the "corporate veil" test. *See Valley Cabinet*, 877 F.2d at 774 (holding that the transfer of $203,040
27 to a sole shareholder's personal account was not an attempt to defraud the plaintiff trust fund, and
28 therefore did not satisfy the fraudulent intent prong of the "corporate veil" test, because evidence

9

showed that shareholder did not believe money was owed to the fund). Plaintiffs rely on two pieces of evidence to support their argument. The first is a financial report provided by SJW that details payments made from SJW's general checking account at Comerica. Watson Decl. Ex. J.[7] According to the report, approximately $1 million was paid from SJW's general account to S.J. Weaver Contracting, Inc. - *not* Weaver personally - between January 9, 2004 and April 2, 2004. *Id.*[8] When asked about the payments at his deposition, Weaver stated that he did not know how the money had been used. Watson Decl., Ex. K at 50. Plaintiffs believe that these facts establish a genuine issue of material fact with regard to whether Weaver transferred funds from SJW's general account with the intent to defraud creditors.

Defendant, however, provides ample evidence to negate any reasonable inference of fraudulent intent that might be drawn from plaintiffs' limited evidence. In his declaration, SJW's assistant controller states that the allegedly suspicious payments were actually payments to SJW's payroll account at Bank of America. Nguyen Reply Decl., ¶ 6. Defendant also provides documents tracking the progress of the first payment listed on the financial report - a $215,000 payment made on January 9, 2004 - from the Comerica general account to the Bank of America payroll account and then to employees. These documents include the cancelled check payable to SJW that was deposited at Bank of America, a copy of the Bank of America payroll account statement for the month of January 2004 that displays the deposit, and a copy of a report produced by ADP, SJW's payroll service, that shows payments of $213,000 - drawn from the Bank of America account - to employees on January 9, 2004. Nguyen Reply Decl., Exs. A-C. Plaintiffs provide no evidence (or specific argument) that the funds were used for anything other than payroll purposes.

In addition to rebutting plaintiffs' evidence of a fraudulent transfer, defendant provides additional evidence that Weaver did not misuse the corporate form to defraud creditors. In his declaration, Weaver states that he has paid nearly $1 million to SJW's creditors since SJW's bankruptcy.

---

[7] Defendant objects to the introduction of the financial report on the grounds that it is irrelevant. The information could be highly relevant to demonstrating fraudulent intent and is therefore admissible. The Court OVERRULES defendant's objection.

[8] Plaintiffs contend, and Weaver does not contest, that the report shows that approximately $6 million was transferred between the two accounts from January 9, 2004 and March 13, 2005. Plaintiffs, however, have submitted only the first page of the report, which covers January 9, 2004 to April 2, 2004.

10

Weaver Reply Decl., ¶ 6. Plaintiffs concede this point. Pl. Supp. Brief, 5 n.4. Weaver also notes that he is personally owed $150,000 as a creditor of SJW. Weaver Reply Decl., ¶ 6.

Based on the substantial evidence submitted by defendant and the limited evidence supplied by plaintiffs, the Court concludes that Weaver did not fraudulently misuse the corporate form and that there is no genuine issue of material fact on this issue.

### c. Injustice to plaintiffs

The Court also finds that the degree of injustice that would result from recognition of the corporate entity does not justify piercing SJW's corporate veil. "The inability to collect from an insolvent defendant does not, by itself, constitute an inequitable result." *Valley Cabinet*, 877 F.2d at 774 (quoting *Seymour*, 605 F.2d at 1113). Injustice has been found when "a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business." *Uriarte*, 736 F.2d at 524-25 (quoting *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law*, 95 Harv.L.Rev. 853, 855 (1982)). However, undercapitalization must be purposeful and not simply the result of a "[fall] on bad financial times." *Id.*

SJW's assistant controller states that the company was adequately capitalized at its inception and until a business downturn in 2003-2004. Nguyen Reply Decl., ¶¶ 2-3. Even during the business downturn in 2003-2004, Weaver attempted to keep SJW appropriately capitalized through the infusion of the previously discussed loans. *Id.* at ¶ 4. Plaintiffs provide no evidence to refute these facts. Moreover, although plaintiffs may not be able to collect a judgment against SJW should they prevail at trial, such difficulties are not a sufficient injustice. *See Valley Cabinet*, 877 F.2d at 774.

### 3. Evidentiary objections

As noted above, the Court overrules plaintiffs' objections to the declarations of Steve Weaver and Toan Nguyen. The Court also overrules defendant's objections to the exhibits attached to the Watson declaration. The Court grants defendant's objections to those parts of the Watson declaration that do more than simply identify the exhibits.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment.[9] (Docket No. 61 in 04-4699 and Docket No. 63 in 04-4723).

**IT IS SO ORDERED.**

Dated: August 9, 2006

SUSAN ILLSTON
United States District Judge

---

[9] Although instructed to limit their supplemental briefs to the "corporate veil" issue, plaintiffs nonetheless introduce additional arguments regarding Weaver's personal liability. Plaintiffs argue, but have not plead, that Weaver breached a fiduciary duty to the trust funds and his employees by not making the alleged benefit payments. However, the Ninth Circuit has held that "until an employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000). Therefore, under Ninth Circuit law, Weaver could not have owed a fiduciary duty for the unpaid plan benefits, even if such benefits are owed.

Plaintiffs also argue that Weaver expressly agreed to personal liability by the terms of the agreements. As evidence, plaintiffs provide excerpts from the Laborers' Master Agreement (Watson Decl., Ex. A.) and a copy of the agreement between SJW and the Plasterers' and Cement Masons' Union (Watson Decl., Ex. C). The first agreement contains a provision which binds each listed "employer regardless of whether he/she or it changes the name or style or address of his/her or their business." Watson Decl., Ex. A., 2 § 30. The only "employer" listed in the agreement is S. J. Weaver Contracting, Inc. Watson Decl., Ex. A., 3. The Court concludes that this is insufficient evidence to support the inference that Weaver agreed to be held personally liable to the Laborers' trust funds. Plaintiffs neither allege nor provide evidence that SJW changed its name, style or address.

The second agreement contains a similar provision which states that: "The Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the individual employer, including any name or style under which business is conducted." Plaintiffs neither allege nor provide evidence that SJW changed its name or style or that Weaver is an heir, successor, purchaser or assignee of SJW. Plaintiffs argue, however, that Weaver is the individual employer for this contract because the signature block lists "SJ Weaver" as the employer, not S.J. Weaver Contracting, Inc. Watson Decl. Ex. C. Plaintiffs therefore assert that the agreement was signed "without any reference to any specific corporate entity or business." Pl. Bergo Supp. Brief, 3. The Court disagrees. The signature block contains several references to SJW, including SJW's corporate address, phone number and contractor license number. Moreover, "SJ Weaver" is listed as the individual employer, while "Steve Weaver" is printed on the employer representative/signature line. This difference also suggests that Weaver signed the agreement as a representative of SJW, not as an individual. The Court therefore concludes that Weaver did not expressly agree to personal liability.